UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JULIA BURNHAM and BRUCE
BURNHAM,

Case No. 17-13652

         Plaintiffs,

v.

Paul D. Borman
United States District Judge

WELLS FARGO HOME
MORTGAGE, INC. and FEDERAL
HOME LOAN MORTGAGE
CORPORATION,

Elizabeth A. Stafford
United States Magistrate Judge

         Defendants.

_____/

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

In this action, Plaintiffs Julia and Bruce Burnham have sued Defendant Wells Fargo Home Mortgage, Inc. ("**Wells Fargo**"), which owned and ultimately foreclosed on a mortgage on their home, and Defendant Federal Home Loan Mortgage Corporation ("**Freddie Mac**"), which purchased their home at the foreclosure sale. Plaintiffs assert claims of illegal foreclosure, breach of contract, and fraud. They also argue that their Complaint alleges a claim under the Real Estate Settlement Procedures Act ("**RESPA**"), 12 U.S.C. § 2605.

Before the Court is Defendants' Motion to Dismiss. For the reasons set forth below, each of Plaintiffs' asserted claims is both untimely and insufficient to state a claim for relief. Accordingly, the Court will grant Defendants' Motion to Dismiss.

# I. BACKGROUND

## A. Factual Allegations

Plaintiffs filed this action on October 5, 2017 in the 6th Circuit Court for the County of Oakland. (ECF No. 1, Notice of Removal Ex. A, Summons and Complaint at Pg ID 19-183 ("**Compl.**").) The following is a summary of the factual allegations pled in the Complaint.

This lawsuit concerns real property at 927 Hillsborough Drive in Rochester Hills, Michigan. (*Id.* ¶ 4.) Plaintiffs obtained fee simple ownership of the subject property in the summer of 1999. (*Id.* ¶ 8; Ex. 1, Warranty Deed.) Three and a half years later, Plaintiffs refinanced the property by borrowing $259,000 from Defendant Wells Fargo. The loan was represented by a promissory note dated January 27, 2003 (Compl. ¶ 9), and secured by a mortgage on the subject property dated January 27, 2003 and recorded on March 5, 2004. (*Id.* ¶ 11; Ex. 2, Mortgage.)

After Plaintiff Julia Burnham lost her job in July 2008, she contacted Wells Fargo to explain her concern that she and her husband would fall behind in their payments, and was directed to "write a letter to Wells Fargo explaining her situation so that she may qualify for a moratorium." (Compl. ¶¶ 14-15.) She faxed a letter to Wells Fargo on July 26, 2008, and then a follow-up letter three days later. (*Id.* ¶ 16; Ex. 4, July 26, 2008 Fax; Ex. 5, July 29, 2008 Fax.) From July 29, 2008 until January 29, 2009, Ms. Burnham worked with Wells Fargo on an application for a loan

modification. (Compl. ¶ 17.)

The Complaint alleges, however, that during this time, and "[u]nbeknownst to Plaintiffs, Defendant [Wells Fargo] was beginning foreclosure proceeding[s] against them, evidenced by the publication of a foreclosure notice in the Oakland County Legal News on January 15, 2009." (*Id.* ¶ 18; Ex. 6, Foreclosure Notice.) The foreclosure notice stated that there would be a sheriff's sale of the subject property on February 17, 2009. (Foreclosure Notice at 1, Pg ID 69.)

Meanwhile, Wells Fargo informed Ms. Burnham that she might qualify for a "debt-to-income" program, and she faxed certain requested documents to Wells Fargo on January 29, 2009. Her fax included an explanation of the union grievance proceedings regarding her termination that were then underway, documents evidencing unemployment assistance, and a letter from Plaintiffs' niece representing that she would loan Plaintiffs between $1000 and $1200 per month to assist with their mortgage payments. (Compl. ¶ 20; Ex. 7, January 29, 2009 Fax.)

Plaintiffs allege that they did not hear from Wells Fargo until Ms. Burnham contacted them again in June 2009, at which time an agent of Wells Fargo told her that to qualify for a loan modification, she would have to pay $8,900. (Compl. ¶¶ 21-22.) On June 30, 2009, she sent two money orders to Wells Fargo totaling $8,900. (Compl. Ex. 8, Western Union Receipts.) Plaintiffs allege that Ms. Burnham "was led to believe that the $8,900 would bring her current on her loan." (Compl. ¶ 24.)

Between June 30, 2009 and July 30, 2009, Plaintiffs then allege, Ms. Burnham faxed various documents to Wells Fargo at its request, including tax returns and other financial information. (*Id.* ¶ 25; Ex. 9, Loan Modification Documents.)

In July 2009, Wells Fargo presented Plaintiffs with a Home Affordable Modification Program Loan Trial Period plan ("**Trial Period Plan**" or "**TPP**"). (Compl. ¶ 26.) The TPP provided that if Plaintiffs made certain representations, and those representations "continue[d] to be true in all material respects," then Wells Fargo would "provide [Plaintiffs] with a Loan Modification Agreement . . . that would amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage." (Compl. Ex. 10, Trial Period Plan at 1, Pg ID 102.) In signing the TPP, Plaintiffs agreed to certain representations, including the following:

> A. I am unable to afford my mortgage payments for the reasons indicated in my Hardship Affidavit and as a result, (i) I am either in default or believe I will be in default under the Loan Documents in the near future, and (ii) I do not have access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;
>
> B. I live in the Property as my principal residence, and the Property has not been condemned;
>
> C. There has been no change in the ownership of the Property since I signed the Loan Documents;
>
> D. I am providing or already have provided documentation for all income that I receive . . . ;
>
> E. Under penalty of perjury, all documents and information I have provided to Lender pursuant to this Plan, including the documents and information regarding my eligibility for the program, are true and correct; and

4

F. If Lender requires me to obtain credit counseling, I will do so.

(*Id.* at 1-2, Pg ID 102-03.)

In the TPP, Plaintiffs agreed to pay Wells Fargo three "Trial Period Payments" of $1,301.33 each. (*Id.* at 2, Pg ID 103.) The TPP provided that Wells Fargo would "suspend any scheduled foreclosure sale" as long as Plaintiffs continued to meet their obligations under the TPP, but that "any pending foreclosure action will not be dismissed and may be immediately resumed from the point at which it was suspended if this Plan terminates, and no new notice of default, notice of intent to accelerate, notice of acceleration, or similar notice will be necessary" to continue the foreclosure action, with "all rights to such notices being hereby waived to the extent permitted by applicable law." (*Id.*) The TPP further provided that "the Loan Documents will not be modified and this Plan will terminate" if one of three events occurred: "(i) the Lender does not provide me a fully executed copy of this Plan and the Modification Agreement; (ii) I have not made the Trial Period payments required under . . . this Plan; or (iii) the Lender determines that my representations . . . are no longer true and correct." (*Id.*) Finally, the TPP provided that after Wells Fargo was able to determine the "final amounts of unpaid interest and any other delinquent amounts (except late charges)" to be added to the loan balance (and after Wells Fargo deducted amounts paid under the TPP from that balance), Wells Fargo would "determine a new payment amount" and would thereafter "send [Plaintiffs] a

Modification Agreement for [their] signature which will modify [their] Loan Documents as necessary to reflect this new payment amount and waive any unpaid late charges accrued to date." (*Id.* at 3, Pg ID 104.) Plaintiffs signed the TPP on July 28, 2009, and faxed it to Wells Fargo two days later. (*Id.* at Pg ID 104-05.)

Plaintiffs made the three payments required of them under the TPP. (Compl. ¶ 28; Ex. 11, TPP Payments.) In a September 30, 2009 letter, Wells Fargo acknowledged this, but stated that Plaintiffs still had yet to submit certain required documents: a "[c]opy of the two most recent pay stubs," a "Hardship Affidavit for Co-Borrower," and a "[c]opy of the most recent bank statement." (Compl. ¶ 29; Ex. 12, September 30, 2009 Letter at Pg ID 126.) Wells Fargo stated in the letter that the trial period would be extended by two months to permit Plaintiffs to submit these documents, during which time two more trial period payments of $1,301.33 would be required. (Compl. ¶ 30; September 30, 2009 Letter at Pg ID 126.) Plaintiffs allege that they made both payments. (Compl. ¶ 31; Ex. 13, December 2009 Payment.)

Plaintiffs received another letter from Wells Fargo on or around December 22, 2009. (Compl. ¶ 32; Ex. 14, December 22, 2009 Letter.) In it, Wells Fargo reminded Plaintiffs that they were "still in the Trial Period Plan of this program, which requires you to make three timely trial period payments and provide specific documentation to complete your qualification for this program." (December 22, 2009 Letter at 2, Pg ID 134.) Specifically, Wells Fargo requested copies of the most

recent federal tax return as well as a profit or loss statement of each self-employed borrower, and the most recent federal tax return as well as benefits documentation for "each borrower who has income such as social security, disability or death benefits, pension, public assistance, or unemployment." (*Id.*) The letter contained the following statement in capitalized letters: "We are in the process of trying to move your modification to the next stage and find that we are either missing information or need clarification." (*Id.*) Wells Fargo requested that Plaintiffs fax the documents no later than December 27, 2009, and also that they call Wells Fargo within 24 hours of sending the fax to confirm receipt. (*Id.*)

Plaintiffs allege that they continued to make payments under the TPP, and an exhibit attached to the Complaint reflects that they made payments of $1,301.33 in February, March, and April of 2010. (Compl. ¶ 33; Ex. 15, 2010 Payments.)

According to the Complaint, on or about May 2, 2010, Plaintiffs became aware of a pending sheriff's sale of the subject property that was scheduled for May 4, 2010. (Compl. ¶ 34.) "Unsure of why there would be a sale on their home when they were brought current by the $8,900 payment in June of 2009, and had been making payments to Wells Fargo since July of 2009," Plaintiffs allege that they contacted Wells Fargo "and were told that Wells Fargo hadn't received some of Plaintiffs' information." (*Id.* ¶ 35.) Plaintiffs allege that Wells Fargo never told them that more information was needed. (*Id.* ¶ 36.) Plaintiffs further allege that they

immediately sent the requested information to Wells Fargo, and that they "faxed Wells Fargo additional information on May 4, 2010." (*Id.* ¶¶ 37-38; Ex. 16, May 2, 2010 Fax; Ex. 17, May 4, 2010 Fax.)

Plaintiffs allege on information and belief that a foreclosure sale was held on May 4, 2010, at which Defendant Freddie Mac "bid the total amounts due on the loan, making the amount required to redeem the property from the sale $250,867.36." A Sheriff's Deed was issued to Freddie Mac on May 4, 2010, and recorded on May 18, 2010. (Compl. ¶¶ 12, 39; Ex. 3, Sheriff's Deed.)

On May 13, 2010, Plaintiffs faxed Wells Fargo a request to rescind the foreclosure sale because Plaintiffs were in a TPP and had been making payments since the previous July. (Compl. ¶ 40; Ex. 18, May 13 Fax.) In a letter dated May 24, 2010, Wells Fargo denied the request, providing the following explanation:

> On April 19, 2010 your loan was removed from the Home Affordable Modification Program (HAMP) because the documents we had requested from you had not been received. We had last spoken with you on March 12, 2010. At that time you said you would be sending the requested documents. Documents were finally received on May 03, 2010 but receiving documents 1 day prior to the foreclosure sale does not permit Loss Mitigation with enough time [*sic*] to review the documents and make a decision.
>
> As of today's date, the loan is 15 payments past due and is due for the March 01, 2009 payment. The terms of the Note and Mortgage/Deed of Trust outline the conditions under which we can accelerate the collection of the debt. As these conditions were met, our foreclosure action is valid.

(Compl. Ex. 19, May 24, 2010 Letter; Compl. ¶¶ 41-42.)

Plaintiffs allege that "[b]etween June 30, 2009, and May of 2010, Plaintiffs paid Wells Fargo no less than $20,611.97 - $8,900 plus nine payments of $1,301.33." (Compl. ¶ 43 (citing Exs. 8, 11, 13, 15).) Plaintiffs further allege that "[i]t is not possible that Plaintiffs were 15 payments behind on their mortgage." (*Id.* ¶ 44.)

On December 21, 2010, Freddie Mac filed an eviction action in Michigan's 52nd District Court. (Compl. ¶ 45; Ex. 20, District Court Summons and Complaint.) An eviction order was issued on May 10, 2011, and posted on May 12. (Compl. Ex. 21, Register of Actions at 2, Pg ID 182.) The eviction order was issued pursuant to a consent judgment of possession that had been signed by Plaintiffs and entered on February 17, 2011. (*Id.*; ECF No. 2, Defs.' Mot. Ex. 3, District Court Judgment.)

Plaintiffs allege that they "always provided [Wells Fargo] with all information and documents requested of them in a prompt and timely manner," while Wells Fargo "routinely lost documents, misrepresented payment figures and account information, and illegally charged Plaintiffs with excessive fees and interest." (Compl. ¶¶ 47-48.) Plaintiffs allege that through the entire loan modification review process, Wells Fargo represented that their application was complete and they should "be patient and . . . wait for a decision," but that no such decision was ever relayed to Plaintiffs. (*Id.* ¶¶ 49-50.) Plaintiffs allege that they relied to their detriment on Wells Fargo's assurances that Plaintiffs would receive a permanent loan

modification in exchange for making payments and taking other actions, and Wells Fargo never delivered on those assurances. (*Id.* ¶¶ 51-53.) Plaintiffs further allege that they were qualified at all times for "outside" and "in-house" loan modifications, and that they "at all times were, and still are, able to afford a reasonable monthly mortgage payment were [Wells Fargo] to work with them in good faith to modify the loan." (*Id.* ¶¶ 54-56.) Lastly, Plaintiffs allege that Wells Fargo never advised Plaintiffs that they had been denied for any loan modification options, thereby depriving them of the right to appeal any such adverse decision. (*Id.* ¶ 57.)

Plaintiffs seek various forms of compensatory damages, damages for emotional distress, and redress for the "personal and economic harm" caused to them by the negative credit reporting that they allege Wells Fargo engaged in. (*Id.* ¶¶ 58-60.) Plaintiffs also seek an accounting of all sums paid. (*Id.* ¶ 61.)

## B.  Procedural History

Plaintiffs first filed suit against Wells Fargo in the 6th Circuit Court for Oakland County on April 21, 2017. (ECF No. 7, Pls.' Resp. Ex. 22, April 2017 Complaint.) That case was dismissed without prejudice on July 27, 2017.

On October 5, 2017, Plaintiffs filed suit again in the 6th Circuit Court for Oakland County, represented by a new attorney and with Freddie Mac added as a defendant. (*See* Compl. at Pg ID 19-30.) In Count I of the Complaint, Plaintiffs assert a claim for illegal foreclosure, alleging that Defendants adjourned the foreclosure

sale from February 17, 2009 to May 4, 2010 without proper notice. (*Id.* ¶¶ 63-66.) In Count II, Plaintiffs assert claims for breach of contract and breach of the implied covenant of good faith and fair dealing, based on allegations that Defendants disingenuously negotiated loss mitigation assistance with Plaintiffs and misled them about "approval and extension of loss mitigation as an alternative to foreclosure." (*Id.* ¶ 70; *see generally id.* ¶¶ 67-70.) In Count III, Plaintiffs assert a fraud claim, alleging two specific misrepresentations: (1) that Defendants misrepresented that they "were reviewing Plaintiffs for a loan modification and advised Plaintiffs to not worry about the foreclosure or sheriff[']s sale, omitting the fact that the sale was not being delayed during these negotiations," and (2) that Defendants misrepresented "that the foreclosure and Sheriff[']s Sale were performed lawfully and in accordance with industry standards, and that Plaintiffs would not be able to get their house back." (*Id.* ¶ 73; *see generally id.* ¶¶ 71-81.)

Defendants removed the action to this Court on November 9, 2017. (ECF No. 1, Notice of Removal.) Defendants filed the instant Motion to Dismiss on the same day. (ECF No. 2, Defs.' Mot.) After this Court extended Plaintiffs' response deadline pursuant to a Stipulated Order (ECF No. 5), Plaintiffs filed a timely Response on December 14, 2017. (ECF No. 7, Pls.' Resp.) Defendants filed a timely Reply on December 27, 2017. (ECF No. 8, Defs.' Reply.)

The Court conducted a hearing on Defendants' Motion to Dismiss on

Wednesday, January 17, 2018, and now issues the following ruling.

## II.   LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b)(6) allows for the dismissal of a case where the complaint fails to state a claim upon which relief can be granted. When reviewing a motion to dismiss under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012).

To state a claim, a complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he complaint 'does not need detailed factual allegations' but should identify 'more than labels and conclusions.'" *Casias v. Wal–Mart Stores, Inc.*, 695 F.3d 428, 435 (6th Cir. 2012) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The court "need not accept as true a legal conclusion couched as a factual allegation, or an unwarranted factual inference." *Handy-Clay*, 695 F.3d at 539 (internal citations and quotation marks omitted).

In other words, a plaintiff must provide more than "formulaic recitation of the elements of a cause of action" and his or her "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56. The Sixth Circuit has recently reiterated that "[t]o survive a motion to dismiss, a

litigant must allege enough facts to make it plausible that the defendant bears legal liability. The facts cannot make it merely possible that the defendant is liable; they must make it plausible." *Agema v. City of Allegan*, 826 F.3d 326, 331 (6th Cir. 2016) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d); *see also Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 680 (6th Cir. 2011) ("Assessment of the facial sufficiency of the complaint must ordinarily be undertaken without resort to matters outside the pleadings."). Courts have carved out a narrow exception to this rule, however: a district court ruling on a Rule 12(b)(6) motion "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting *Amini v. Oberlin Coll.,* 259 F.3d 493, 502 (6th Cir. 2001)).

### III.  DISCUSSION

In their Motion to Dismiss, Defendants argue that all of Plaintiffs' claims are both time-barred and insufficiently pled under Rule 12(b)(6). For the reasons discussed below, the Court finds that Defendants' arguments are meritorious, and

will grant Defendants' Motion to Dismiss accordingly.[1]

## A.    Illegal foreclosure (Count I)

The first count of the Complaint is a claim for illegal foreclosure, based primarily on the allegation that Defendants improperly adjourned the foreclosure sale without notice. That claim is time-barred. Even it were not, Plaintiffs have failed to state a claim for wrongful foreclosure under Michigan law.

### 1.    Any illegal foreclosure claim is time-barred.

Defendants first contend that Plaintiffs' illegal foreclosure claim is untimely. The governing statute of limitations provides that for "any action for the recovery or possession of any lands" to which the defendant claims title "through some deed made upon the sale of the premises . . . by a sheriff upon a mortgage foreclosure sale[,] the period of limitation is 5 years." Mich. Comp. Laws § 600.5801(1). Under Michigan law, for the purposes of measuring the limitations period, "[w]henever any person is disseised, his . . . claim to recover land accrue[s] at the time of his disseisin." Mich. Comp. Laws § 600.5829(1). "Disseisin occurs when the true owner is deprived of possession or displaced by someone exercising the powers and privileges of ownership." *Canjar v. Cole*, 283 Mich. App. 723, 731 (2009) (quoting

---

[1] Defendants also argue as a threshold matter that the Complaint should be dismissed in its entirety under the doctrine of *res judicata*, based on the December 2010 eviction proceeding conducted in the 52nd District Court. Because the Court will grant Defendants' Motion to Dismiss on timeliness and Rule 12(b)(6) grounds, however, the Court need not reach this issue.

*Kipka v. Fountain*, 198 Mich. App. 435, 439 (1993)); *see also Pine Bluffs Ass'n v. DeWitt Landing Ass'n*, 287 Mich. App. 690, 727 n.21 (2010).

Defendants argue that Plaintiffs were disseised, and that their claim therefore accrued, when Freddie Mac exercised the powers and privileges of ownership of the subject property by recording the sheriff's deed on May 4, 2010, thus establishing that the limitations period expired on May 4, 2015—well before Plaintiffs filed suit. Plaintiffs counter that the limitations period should be equitably tolled, and that this Court should find that the limitations period began when the eviction order was issued in May 2011. That would bring this lawsuit within the limitations period, Plaintiffs maintain, because they "filed their initial complaint against Defendants in April 2017, within the six (6) year time period." (Pls.' Resp. at 35, Pg ID 291.) (Here, Plaintiffs presumably refer to their first lawsuit filed in the Oakland County Circuit Court; this lawsuit, their second, was filed in October 2017.) There is a colorable argument to be made that the putative claim accrued on the date the eviction order was entered on the theory that this, more than the recording of the deed, was what caused Plaintiffs to be "deprived of possession or displaced by someone exercising the powers and privileges of ownership." *Canjar*, 283 Mich. App. at 731. But even assuming that to be the case, and even if this Court were to merge the April 2017 lawsuit with this one for limitations purposes, the action would still be time-barred because the applicable statute of limitations is five years, not six. Plaintiffs' illegal

foreclosure claim is time-barred, and even equitably tolling the limitations period in the way that Plaintiffs request would not change that fact.[2]

### 2. Plaintiffs have failed to state an illegal foreclosure claim.

Apart from the timeliness issue, Plaintiffs have failed to state a claim for illegal foreclosure. "Non-judicial foreclosures, or foreclosures by advertisement, are governed by statute under Michigan law." *Conlin v. Mortgage Electronic Registration Sys., Inc.*, 714 F.3d 355, 359 (6th Cir. 2013) (citing *Munaco v. Bank of America*, 513 F. App'x 508, 511 (6th Cir. 2013)). In addition to setting forth "certain steps that the mortgagee must go through in order to validly foreclose," these statutes "provide the mortgagor six months after the sheriff's sale in which to redeem the property." *Id.* (citing Mich. Comp. Laws § 600.3240(8) and *Mitan v. Fed. Home Loan Mortg. Corp.,* 703 F.3d 949, 951 (6th Cir. 2012)). "Once this statutory redemption period lapses, however, the mortgagor's 'right, title, and interest in and to the property' are extinguished." *Id.* (quoting *Piotrowski v. State Land Office*

---

[2] At the January 17, 2018 hearing, Plaintiffs' counsel cited *Adams v. Adams*, 276 Mich. App. 704 (2007), in arguing that the limitations period applicable in this case is actually 15 years. But the limitations period applied in *Adams* was drawn from Mich. Comp. Laws § 600.5801(4), which creates a residual 15-year limitations period for actions for the recovery or possession of land that are not covered by one of the other sub-provisions of § 600.5801. As noted above, this case *does* fall within one of those other sub-provisions: § 600.5801(1), which imposes a five-year limitations period on actions involving foreclosure sales. The claim at issue in *Adams* did not involve a foreclosure sale, or otherwise fall within one of the specified categories in §§ 600.5801(1)-(3), so *Adams* is inapposite.

*Bd.,* 302 Mich. 179, 187-88 (1942) and citing Mich. Comp. Laws § 600.3236).

At that point, the mortgagor must clear a high bar to have the foreclosure and sale reversed. The Sixth Circuit has held that to further the statutes' interest in affording finality to the buyers of foreclosed properties, "the ability for a court to set aside a sheriff's sale has been drastically circumscribed." *Conlin*, 714 F.3d at 359. Specifically, "Michigan courts have held that once the statutory redemption period lapses, they can only entertain the setting aside of a foreclosure sale where the mortgagor has made 'a clear showing of fraud, or irregularity.'" *Id.* (quoting *Schulthies v. Barron,* 16 Mich. App. 246, 247-48 (1969)). In addition, plaintiffs seeking to set aside a foreclosure sale "must show that they were prejudiced by defendant's failure to comply with [the foreclosure-by-advertisement statute]. To demonstrate such prejudice, they must show that they would have been in a better position to preserve their interest in the property absent defendant's noncompliance with the statute." *Kim v. JPMorgan Chase Bank, N.A.*, 493 Mich. 98, 115–16 (2012).

On top of that, "not just any type of fraud will suffice. Rather, '[t]he misconduct must relate to the foreclosure procedure itself.'" *Conlin*, 714 F.3d at 361 (quoting *El–Seblani v. IndyMac Mortg. Servs.,* 510 F. App'x 425, 429–30 (6th Cir. 2013)). Courts in this District have consistently held that the practice of "dual tracking"—*i.e.,* "a common tactic by banks [of] institut[ing] foreclosure proceedings at the same time that a borrower in default seeks a loan modification"—"relate[s] to

the loan modification process rather than the foreclosure process," and is therefore not a valid basis for setting aside a foreclosure sale for fraud or irregularity. *Kloss v. RBS Citizens, N.A.*, 996 F. Supp. 2d 574, 585 (E.D. Mich. 2014); *see also Buttermore v. Nationstar Mortg. LLC*, No. 16-14267, 2017 WL 2306446, at *7 (E.D. Mich. May 26, 2017) (Borman, J.) ("Courts in this District have repeatedly held . . . that dual-tracking allegations do not constitute allegations of irregularities in the foreclosure process, as required to set aside a foreclosure by advertisement."); *Trudell v. Carrington Mortg. Servs., L.L.C.*, No. 16-10441, 2016 WL 6080822, at *4 (E.D. Mich. Sept. 27, 2016) ("Despite Plaintiff's attempt to blend the loan modification process and foreclosure process, case law in this district holds each process separate. . . . Plaintiff's allegation of dual tracking cannot demonstrate a "fraud or irregularity" necessary to toll the redemption period."), *report and recommendation adopted sub nom. Trudell v. Carrington Mortg. Servs., LLC*, No. 16-10441, 2016 WL 6070124 (E.D. Mich. Oct. 17, 2016); *Bey v. LVN Corp.*, No. 14-13723, 2015 WL 4546752, at *11 (E.D. Mich. July 28, 2015) ("Alleged dual tracking violations relate to the loan modification process rather than the foreclosure process . . . .") (internal quotation marks omitted) (quoting *Boluch v. J.P. Morgan Chase,* No. 14–14705, 2015 WL 1952285, at *2 (E.D. Mich. Apr. 29, 2015)).

In this case, it is undisputed that Plaintiffs did not redeem the property within the statutory redemption period. They must therefore make "a clear showing of

fraud, or irregularity" in the foreclosure process in order to have the sheriff's sale set aside. *Conlin*, 714 F.3d at 359. Cognizant of this, Plaintiffs argue that "setting aside the foreclosure sale remains a viable remedy since Plaintiffs challenge the validity of the sale for fraud." (Pls.' Resp. at 25, Pg ID 281.) But Plaintiffs' fraud allegations concern Wells Fargo's alleged misrepresentations concerning the loan modification review process—the alleged "dual tracking," in other words—and as the decisions discussed above clearly indicate, fraud or irregularity pertaining to loan modification review does not constitute fraud or irregularity concerning the foreclosure process itself, and only the latter will justify setting aside a foreclosure sale. *See Kloss*, 996 F. Supp. 2d at 585; *Buttermore*, 2017 WL 2306446, at *7; *Trudell*, 2016 WL 6080822, at *4; *Bey*, 2015 WL 4546752, at *11. Plaintiffs' only other fraud allegation is that Defendants misrepresented "that the foreclosure and Sheriff[']s Sale were performed lawfully and in accordance with industry standards, and that Plaintiffs would not be able to get their house back." (Compl. ¶ 73(b).) But even if this were a false statement, it cannot amount to an act of fraud within the foreclosure process, since the allegation is that Defendants made this representation to Plaintiffs *after* the foreclosure sale took place. Plaintiffs have failed to make the clear showing of fraud in the foreclosure process that is required to set aside the sheriff's sale.

The Complaint does arguably allege an irregularity: that Wells Fargo "adjourned the foreclosure sale from February 17, 2009, to May 4, 2010, without

proper notice" and also "failed to publish a notice of adjournment in the newspaper that published the notice of sale." (Compl. ¶¶ 64-65.) Michigan law provides that a foreclosure sale may be adjourned

> by posting a notice of such adjournment before or at the time of and at the place where said sale is to be made, and if any adjournment be for more than 1 week at one time, the notice thereof, appended to the original notice of sale, shall also be published in the newspaper in which the original notice was published, the first publication to be within 10 days of the date from which the sale was adjourned and thereafter once in each full secular week during the time for which such sale shall be adjourned.

Mich. Comp. Laws § 600.3220.

Plaintiffs' allegations regarding the adjournment of the sheriff's sale are sparse, but even assuming they are enough to allege a violation of § 600.3220, Plaintiffs have failed to allege prejudice resulting from any such violation. A foreclosure sale will generally be set aside for fraud or irregularity in the foreclosure process only if the plaintiff demonstrates that he or she suffered prejudice resulting from that fraud or irregularity, *see Kim*, 493 Mich. at 115–16, and courts have applied this principle to sale adjournment notice defects under § 600.3220. *See, e.g., Spadafore v. Aurora Loan Servs., LLC*, 564 F. App'x 168, 172 (6th Cir. 2014) (holding that a foreclosure sale could not be set aside based on allegations that the defendant "adjourned the foreclosure sale for more than one week without republishing notice of the sale" in violation of § 600.3220 because the plaintiffs

"have not alleged any prejudice as a result of [the defendant]'s alleged failure to republish"); *Drew v. Kemp-Brooks*, 802 F. Supp. 2d 889, 896 (E.D. Mich. 2011) ("Even assuming the foreclosure sale adjournments were defective, invalidation of the sale is not warranted because Plaintiff fails to allege any prejudice from the alleged defects.") (citing *Jackson Inv. Corp. v. Pittsfield Prods., Inc.,* 162 Mich. App. 750, 755–57 (1987)). Indeed, courts in this District that have analyzed allegations of such defects under Michigan law have found the necessary prejudice lacking in circumstances very much like those presented here:

> Plaintiff admits that she received a notice of default and that she was aware that she had fallen behind on her mortgage payments. Plaintiff has not pled facts nor has she presented any evidence that the alleged defect in notice (1) prevented her from making a bid at the sale; (2) that she had the funds to outbid the highest bidder at the sale, let alone pay the entire unpaid balance owing on the loan; or (3) that she attempted to redeem the property during the redemption period. Indeed, Plaintiff does not indicate how the alleged defects in the mortgage process prejudiced her.

*Elson v. Deutsche Bank Nat. Tr. Co.*, No. 11-14100, 2012 WL 1902916, at *6 (E.D. Mich. May 25, 2012); *see also Caillouette v. Wells Fargo Bank N.A.*, No. 11-10204, 2012 WL 1033598, at *8 (E.D. Mich. Mar. 27, 2012) (reaching the same conclusion based on the same considerations); *Piccirilli v. Wells Fargo Bank, N.A.*, No. 11-10264, 2012 WL 1094333, at *8 (E.D. Mich. Mar. 30, 2012) (same). The same is true of Plaintiffs' allegations in this case. Plaintiffs have failed to allege prejudice resulting from a notice defect, as would be required to set aside the foreclosure sale.

Finally, Plaintiffs contend that they have plausibly alleged a "quiet title" claim under Mich. Comp. Laws § 600.2932(1), which provides that "[a]ny person . . . who claims any right in, title to, equitable title to, interest in, or right to possession of land, may bring an action in the circuit courts against any other person who claims or might claim any interest inconsistent with the interest claimed by the plaintiff," irrespective of who is in possession of the land. Because Plaintiffs have failed to assert a basis for setting aside the foreclosure sale, however, there is also no basis for a "quiet title" claim. "[Q]uiet title is a remedy, not a freestanding claim. Like a request for an injunction or disgorgement, a request for quiet title is only cognizable when paired with some recognized cause of action." *Jarbo v. Bank of N.Y. Mellon*, 587 F. App'x 287, 290 (6th Cir. 2014) ("Because the [plaintiffs] assert their quiet title claim as a discrete count, the district court was correct to dismiss it."); *see also Shaya v. Countrywide Home Loans, Inc.*, 489 F. App'x 815, 819 (6th Cir. 2012) ("[S]ince the district court did not err by dismissing all of Plaintiffs' claims for failing to state a claim, the district court is affirmed for dismissing Plaintiffs' request to quiet title in their favor."), *as amended* (May 24, 2012).

On both timeliness and Rule 12(b)(6) grounds, the Court will grant Defendants' Motion to Dismiss as to Plaintiffs' claim for illegal foreclosure.

**B.       Breach of contract (Count II)**

In the second count of their Complaint, Plaintiffs assert that Defendants breached the mortgage contract and Michigan's implied covenant of good faith and fair dealing by, "among other things, . . . [d]isingenuously negotiating loss mitigation assistance with the Plaintiffs [and] [m]isleading Plaintiff[s] about approval and extension of loss mitigation assistance as an alternative to foreclosure." (Compl. ¶ 70.) Plaintiffs also argue that the Complaint plausibly and sufficiently alleges a breach of the Trial Period Plan ("**TPP**"). Under any theory, however, Plaintiffs' asserted breach of contract claim is both untimely and deficiently alleged.

**1.       Any breach of contract claim is time-barred.**

Mich. Comp. Laws § 600.5807(8) establishes a six-year limitations period for claims for breach of contract generally, and any breach of contract within Plaintiffs' allegations could only have occurred before the sheriff's sale on May 4, 2010. Plaintiffs did not file suit against either Defendant until 2017. Plaintiffs have also failed to identify any basis for tolling the statute of limitations. Any breach of contract claim is therefore time-barred.[3]

---

[3] Mich. Comp. Laws § 600.5807(8)'s six-year period is a residual limitations period applicable to breach of contract actions that do not fall within the categories set forth in Mich. Comp. Laws §§ 600.5807(1)-(7). Of those, the only sub-provision that has any arguable relevance to this case is § 600.5807(4), which imposes a limitations period of 10 years on "actions founded upon covenants in deeds and mortgages of real estate." As discussed *infra*, however, Plaintiffs have failed to allege that Defendants breached any specific term of the mortgage, let alone any "covenant."

**2.      Plaintiffs have failed to state a claim for breach of contract.**

Even putting aside the limitations issue, Plaintiffs' putative breach of contract claim is deficient under every theory that Plaintiffs advance in support of it.

**a)      Breach of express contract – mortgage and note**

Plaintiffs have not alleged the breach of any specific provision of the mortgage or note in the Complaint or in their Response to Defendants' Motion. They have also failed to plead facts from which the Court could infer an allegation that Defendants breached any particular term of the mortgage or note. These omissions undercut the viability of any breach of contract claim premised on the mortgage or the note. *See Thill v. Ocwen Loan Servicing, LLC*, 8 F. Supp. 3d 950, 955 (E.D. Mich. 2014) (finding that the plaintiff had failed to state a breach of contract claim because his "allegations do not identify the specific terms of the contract allegedly breached— such as identifying 'what payments were made, when or how they were supposed to be credited, what mistakes were made, why they are considered mistakes under the contract, etc.'") (collecting cases) (quoting *Anderson v. Bank of America*, No. 13-12834, 2013 WL 5770507, at *4 (E.D. Mich. Oct. 24, 2013)); *Alshaibani v. Litton Loan Servicing, LP*, 528 F. App'x 462, 465 (6th Cir. 2013) ("As a practical matter, Plaintiffs' factually unadorned allegation that [the defendant] misapplied their payments does no more to render their claim plausible than would a simple legal conclusion that [the defendant] breached the mortgage.") (citing *Iqbal*, 556 U.S. at

679); *Mowett v. JPMorgan Chase Bank*, No. 15-12612, 2016 WL 1259091, at *3 (E.D. Mich. Mar. 31, 2016) ("In addition to alleging the elements of a breach of contract claim, a plaintiff must also identify the specific provisions of the contract that was allegedly breached.") (citing *Thill*, 8 F. Supp. 3d at 955).

Plaintiffs have thus failed to state a claim for breach of the mortgage or note.

### b) Breach of express contract – Trial Period Plan

Plaintiffs suggest another theory for their breach of contract claim in their Response to Defendants' Motion to Dismiss: that Defendants actionably breached the TPP itself. In their Reply, Defendants address this theory in several respects. First, they argue that any claim for breach of TPP is time-barred under Mich. Comp. Laws § 600.5807(8). This argument is meritorious for the reasons discussed above. Any claim for breach of the TPP fails on timeliness grounds alone.

Defendants also contend that any claim for breach of the TPP must be dismissed because Plaintiffs did not expressly assert such a claim in the Complaint. Federal Rule of Civil Procedure 8(f) provides that "[a]ll pleadings shall be so construed as to do justice," and the Sixth Circuit has "interpreted Rule 8(f) to 'require that we not rely solely on labels in a complaint, but that we probe deeper and examine the substance of the complaint." *Mead Corp. v. ABB Power Generation, Inc.*, 319 F.3d 790, 795 (6th Cir. 2003) (quoting *Minger v. Green,* 239 F.3d 793, 799 (6th Cir. 2001). "[T]he label which a plaintiff applies to his pleading

does not determine the nature of the cause of action." *Id.* (alteration in original) (internal quotation marks omitted) (quoting *United States v. Louisville & Nashville RR Co.,* 221 F.2d 698, 701 (6th Cir. 1955)). Instead, "the complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 275–76 (6th Cir. 2010) (internal quotation marks omitted) (quoting *Tam Travel, Inc. v. Delta Airlines, Inc.,* 583 F.3d 896, 903 (6th Cir. 2009)). If the Complaint sets forth plausible factual allegations supporting a claim for breach of the TPP, the Court need not dismiss such a claim solely because Plaintiffs did not expressly assert this as a theory in the Complaint.

However, this Complaint does not set forth plausible allegations supporting a claim for breach of the TPP, because it does not allege conduct that violated any provision of the TPP. Wells Fargo's obligations to Plaintiffs under the TPP were conditioned on the performance of certain actions by Plaintiffs—for example, that Plaintiffs would make timely payments under the TPP, that the representations they made under the TPP would remain accurate, and (most relevantly here) that they would provide timely documentation of their income. The Complaint alleges in a conclusory fashion that "Plaintiffs always provided Wells Fargo Home Mortgage with all information and documents requested of them in a prompt and timely manner." (Compl. ¶ 47.) At the same time, though, the exhibits attached to the

Complaint make clear that around the time of the foreclosure sale, Wells Fargo informed Plaintiffs that they had been disqualified from the loan modification program in which they were enrolled because they had failed to submit documents that Wells Fargo had requested. Wells Fargo explained its position in a May 24, 2010 letter, written in response to Plaintiffs' request that Wells Fargo rescind the foreclosure sale after it had been conducted:

> On April 19, 2010 your loan was removed from the Home Affordable Modification Program (HAMP) because the documents we had requested from you had not been received. We had last spoken with you on March 12, 2010. At that time you said you would be sending the requested documents. Documents were finally received on May 03, 2010 but receiving documents 1 day prior to the foreclosure sale does not permit Loss Mitigation with enough time to review the documents and make a decision.

(Compl. Ex. 19, May 24, 2010 Letter at 1, Pg ID 170.) A different exhibit to the Complaint reflects that five months earlier, Wells Fargo had sent a letter to Plaintiffs stating that as of December 22, 2009, "we still need the documents that are listed below. We want to help you, but we must receive these documents from you before we can move forward with the mortgage payment relief under the Home Affordable Modification Program." (Compl. Ex. 14, December 22, 2009 Letter at at 2, Pg ID 134.) The requested documents included profit or loss statements from each borrower who was self-employed; benefits statements for each borrower who received "income such as social security, disability or death benefits, pension, public

assistance, or unemployment"; and recent federal tax returns for each borrower who fell into either of those two categories. (*Id.*) The letter instructed Plaintiffs to send the documents by December 27, 2009. (*See id.*)

The Complaint does not indicate whether the income documents identified in the December 22, 2009 letter were the same documents that Wells Fargo referred to as not provided several months later in the May 24, 2010 letter. Regardless, these two exhibits are "part of the pleading for all purposes." Fed. R. Civ. P. 10(c). On the one hand, Plaintiffs make a generalized allegation that they sent Wells Fargo "all information and documents requested of them in a prompt and timely manner." (Compl. ¶ 47.) On the other hand, according to the December 22, 2009 and May 24, 2010 letters, Wells Fargo specifically advised Plaintiffs that certain documents were still outstanding and that this was ultimately the reason Plaintiffs were removed from the loan modification program. Plaintiffs have not made any specific allegation that these statements were inaccurate, or that Plaintiffs did in fact comply with the requests in the letters. Even if the Court interprets these competing allegations as consistent with each other, they imply that however prompt and timely Plaintiffs were in sending the documents, they still did not meet Wells Fargo's deadlines. Further, if the Court interprets the competing allegations as mutually contradictory, then the more specific facts contained in the letters outweigh Plaintiffs' generic allegation of promptness and timeliness. *See Cates v. Crystal Clear Techs., LLC,*

874 F.3d 530, 536 (6th Cir. 2017) ("[W]hen a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations.") (internal quotation marks omitted) (quoting *Williams v. CitiMortgage, Inc.*, 498 F. App'x 532, 536 (6th Cir. 2012) (per curiam)); *see also Van Loo v. Cajun Operating Co.*, 64 F. Supp. 3d 1007, 1020 n.3 (E.D. Mich. 2014) (stating the same proposition) (quoting *Creelgroup, Inc. v. NGS Am., Inc.*, 518 F. App'x 343, 347 (6th Cir. 2013)). Either way, even if Plaintiffs had alleged that Wells Fargo failed to meet some specific obligation imposed by the TPP—and it is far from clear that they have—they have not alleged that any such failure was not caused by Plaintiffs' own failure to perform under the TPP.[4]

Apart from this, Plaintiffs' failure to produce or allege the existence of an agreement signed by Wells Fargo is a separate basis for finding that they have not stated a claim for breach of the TPP. The TPP provided, in relevant part, as follows:

> F. If prior to the Modification Effective Date, . . . the Lender does not provide me a fully executed copy of this Plan and the Modification Agreement[,] . . . the Loan Documents will not be modified and this Plan will terminate. . . .

---

[4] Federal Rule of Civil Procedure 9(c) provides that "[i]n pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or been performed." The Complaint does not allege that Plaintiffs met all of their obligations under the TPP, however, and absent some allegation that Wells Fargo's statements in the December 22, 2009 and May 24, 2010 letters were false or inaccurate, the Complaint taken as a whole suggests that the opposite is true.

G. I understand that the Plan is not a modification of the Loan Documents and that the Loan Documents will not be modified unless and until (i) I meet all of the conditions required for modification, (ii) I receive a fully executed copy of a Modification Agreement, and (iii) the Modification Effective Date has passed. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Plan.

(Compl. Ex. 10, Trial Period Plan at 2-3, Pg ID 103-04.) Plaintiffs have not attached a fully executed copy of the TPP or a "Modification Agreement" that was signed by either Defendant as an exhibit to the Complaint, nor have they alleged in the Complaint that any such document exists. Plaintiffs' claim that Defendants violated the TPP by refusing them a loan modification is thus deficient under the TPP itself. It is also deficient under Michigan's statute of frauds, which provides that "[a]n action shall not be brought against a financial institution to enforce . . . [a] promise or commitment to renew, extend, modify, or permit a delay in repayment or performance of a loan, extension of credit, or other financial accommodation" unless "the promise or commitment is in writing and signed with an authorized signature by the financial institution." Mich. Comp. Laws § 566.132(2)(b). Finally, the same statute fatally undermines any claim for breach of the TPP that Plaintiffs could make based on their allegations of oral representations by Wells Fargo regarding Plaintiffs' loan modification prospects—for example, the allegation that Wells Fargo represented "that they were reviewing Plaintiffs for a loan modification and advised

Plaintiffs to not worry about the foreclosure or sheriffs sale, omitting the fact that the sale was not being delayed during these negotiations." (Compl. ¶ 73(a).) In short, the absence of an executed modification agreement or copy of the TPP—along with the lack of any allegation that Plaintiffs ever received one—independently supports the conclusion that Plaintiffs have failed to state a claim for breach of the TPP.

For all of these reasons, even if a claim for breach of the TPP were not time-barred, it would still be deficient based on the face of the Complaint and the exhibits that the Complaint incorporates.

### c) Breach of covenant of good faith and fair dealing

Plaintiffs argue that they have stated a claim for violation of Michigan's implied covenant of good faith and fair dealing, but this argument also lacks merit.

"It has been said that the covenant of good faith and fair dealing is an implied promise contained in every contract 'that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.'" *Hammond v. United of Oakland, Inc.*, 193 Mich. App. 146, 151–52 (1992) (quoting *Fortune v. National Cash Register Co.,* 373 Mass. 96, 104 (1977) and collecting authorities). Defendants insist that Plaintiffs cannot maintain a contract claim for breach of the covenant of good faith and fair dealing because Michigan does not recognize an independent cause of action for such a breach. In response, Plaintiffs quote a decision by another court in this District for the

proposition that "Michigan common law recognizes an implied covenant of good faith and fair dealing that applies to the performance and enforcement of contracts." (Pls.' Resp. at 36, Pg ID 292 (internal quotation marks omitted) (quoting *Burton* v *William Beaumont Hospital*, 373 F. Supp. 2d 707, 718 (E.D. Mich. 2005)).) Yet Plaintiffs omit the next sentence of the opinion: "Michigan does not, however, recognize a claim for breach of an implied covenant of good faith and fair dealing *separate from an action on the underlying contract*." *Burton*, 373 F. Supp. 2d at 718 (emphasis added) (citing *Belle Isle Grill Corp. v. City of Detroit*, 256 Mich. App. 463, 476 (2003)). Indeed, this Court recently dismissed a claim for breach of the covenant of good faith and fair dealing that included allegations materially identical to those made by Plaintiffs in this case:

> This Court has repeatedly rejected this same "implied covenant/breach of contract" argument because Michigan does not recognize a claim for such a breach. *See, e.g., Upshaw v. Green Tree Servicing LLC*, 2015 WL 9269136, at *4 (E.D. Mich. Dec. 21, 2015) ("Michigan does not recognize a cause of action for breach of the implied covenant of good faith and fair dealing"); *Radske* [*v. Fed. Nat'l Mortg. Ass'n*, No. 15-14107, 2016 WL 3667957, at *5 (E.D. Mich. July 11, 2016)] ("Plaintiff's claim that Defendants violated the implied covenant of good faith and fair dealing must be dismissed as a matter of law" because Michigan does not recognize that cause of action). [The plaintiff] provides no basis for the Court to rule differently here.

*Buttermore v. Nationstar Mortg. LLC*, No. 16-14267, 2017 WL 2306446, at *9 (E.D. Mich. May 26, 2017) (Borman, J.) (quoting *Wypych v. Deutsche Bank Nat'l Trust Co.*, No. 16-13836, 2017 WL 1315721, at *5 (E.D. Mich. Apr. 10, 2017).

Plaintiffs also argue that they have asserted a cause of action they call "tortious breach of contract." (Pls.' Resp. at 31, Pg ID 287.) But the cases that Plaintiffs cite in support of this argument—*Hart v. Ludwig*, 347 Mich. 559 (1956), and two decisions that relied on it, *Corl v. Huron Castings, Inc.*, 450 Mich 620 (1996), and *Ferrett v. General Motors Corp.*, 438 Mich. 235 (1991)—all concern the uncontroversial principle that a tort claim cannot be sustained based on a breached promise alone, but must involve the violation of a separate legal duty owed by the defendant to the plaintiff. *See, e.g., Corl*, 450 Mich. 620, 627 n.10 (1996) ("This Court has distinguished between tort and contract actions as follows: 'Where the cause of action arises merely from a breach of promise, the action is in contract. The action of tort has for its foundation the negligence of the defendant, and this means more than a mere breach of a promise.'") (internal quotation marks omitted) (quoting *Hart,* 347 Mich. at 563); *Ferrett*, 438 Mich. at 240-41 (holding that under Michigan Supreme Court precedent, "an employee may not maintain a tort action for negligent evaluation . . . because he does not seek to recover for breach of a duty separate and distinct from any breach of contract") (citing *Hart*, 347 Mich. at 565). Plaintiffs have not alleged the existence (let alone the breach) of any duty owed to

them independently of any putative contract, nor have they cited any authority establishing or even suggesting that their cited decisions demonstrate the existence of an independent cause of action called "tortious breach of contract." *See Schaefer v. Potter*, No. 06-12735, 2007 WL 1153013, at *16 (E.D. Mich. Apr. 17, 2007) ("[T]he concept of a 'tortious' breach of contract is not well accepted. Certainly, no Michigan court has ever recognized such a claim.").

For all of the reasons stated above, Plaintiffs have not pled a cognizable claim for breach of contract under any theory. The Court will therefore grant Defendants' Motion to Dismiss as to Plaintiffs' claims for breach of contract.

## C. Fraud (Count III)

Plaintiffs' fraud claim is premised mainly on the allegation that

Defendants repeatedly made representations and/or omissions to Plaintiffs regarding the nature of the mortgage, and the status of the loan modification, including but not limited to:

a) that they were reviewing Plaintiffs for a loan modification and advised Plaintiffs to not worry about the foreclosure or sheriffs sale, omitting the fact that the sale was not being delayed during these negotiations.

b) that the foreclosure and Sheriffs Sale were performed lawfully and in accordance with industry standards, and that Plaintiffs would not be able to get their house back.

(Compl. ¶ 73.) This claim also fails both on statute of limitation grounds and on the merits.

### 1. Any fraud claim is time-barred.

Defendants argue that Plaintiffs' fraud claim is time-barred for the same reason as Plaintiffs' breach of contract claims are time-barred, and in this regard they are correct. Plaintiffs' fraud claim is subject to a "six-year statute of limitations," which begins on the date of the last alleged misrepresentation. *Shaya v. Countrywide Home Loans, Inc.*, 489 F. App'x 815, 818 (6th Cir. 2012), *as amended* (May 24, 2012) (citing Mich. Comp. Laws § 600.5813 and *Boyle v. Gen. Motors Corp.,* 468 Mich. 226, 232 (2003)). As with the breach of contract claim, the limitations period could not have started running any later than the date of the sheriff's sale: May 4, 2010. As with the breach of contract claim discussed above, Plaintiffs have failed to identify any specific factual basis for tolling the limitations period. Plaintiffs' fraud claim is time-barred.

### 2. Plaintiffs have failed to state a claim for fraud.

Federal Rule of Civil Procedure 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." "At a minimum, Plaintiffs 'must allege the time, place and contents of the misrepresentations upon which they relied.'" *Thielen v. GMAC Mortg. Corp.*, 671 F. Supp. 2d 947, 956 (E.D. Mich. 2009) (quoting *Frank v. Dana Corp.,* 547 F.3d 564, 569–70 (6th Cir. 2008)

Defendants argue that Plaintiffs' fraud claim is deficient because it lacks the particularity required by Rule 9(b). Defendants also argue that any promises relating to future loan modification that Plaintiffs allege were made are not actionable misrepresentations or fraud under the well-established "rule that an action for fraudulent misrepresentation must be predicated upon a statement relating to a past or an existing fact. Future promises are contractual and do not constitute fraud." *Hi-Way Motor Co. v. Int'l Harvester Co.*, 398 Mich. 330, 336 (1976) (citing *Boston Piano and Music Co. v. Pontiac Clothing Co.*, 199 Mich. 141 (1917)).

Both of Defendants' arguments are well taken. In response, Plaintiffs merely state summarily that "[a]s Plaintiffs [have] plainly shown, Defendants acted fraudulently when they told them that there would be no foreclosure sale while their loan modification application was under review." (Pls.' Resp. at 33, Pg ID 289.) This fails to answer either of Defendants' arguments. It is also incorrect. There is no allegation in the Complaint that Plaintiffs were told any such thing. The TPP contained a provision stating that Wells Fargo would suspend foreclosure proceedings pending Plaintiffs' participation in the program, but it also reserved Wells Fargo's right to resume those proceedings if Plaintiffs did not meet their own obligations under the TPP. Plaintiffs have not alleged that they met those obligations.

Plaintiffs also cite *Jarchow v. CitiMortgage, Inc.*, No. 13-11925, 2014 WL 1759074 (E.D. Mich. May 2, 2014), to support an argument that it would be "poor

public policy" to dismiss their fraud claim given that Defendants pursued foreclosure while leading Plaintiffs to believe that they were under review for a loan modification. *Id.* at *3. *Jarchow* has been cited before other courts in this District for the same reason, and those courts have rejected the argument. "First and foremost, *Jarchow* did not involve a claim for fraudulent misrepresentation." *Garrow v. JPMorgan Chase Bank, N.A.*, No. 15-14058, 2016 WL 2894066, at *8 (E.D. Mich. Apr. 27, 2016), *report and recommendation adopted,* No. 15-14058, 2016 WL 2866410 (E.D. Mich. May 17, 2016). Second, "the statute upon which *Jarchow* relied, M.C.L. § 600.3205, has been repealed, and the case no longer governs." *Winters v. Deutsche Bank Nat'l Tr. Co.*, No. 15-13456, 2016 WL 5944717, at *4 (E.D. Mich. Sept. 14, 2016) (citing *Radisavljevich v. Comerica Bank*, No. 14-14777, 2015 WL 4771427, at *5 (E.D. Mich. Aug. 13, 2015)), *report and recommendation adopted sub nom. Winters v. Ocwen Loan Servicing LLC*, 2016 WL 5930528 (E.D. Mich. Oct. 12, 2016).

For these reasons, the Court finds that Plaintiffs' fraud claim is both untimely and inadequately pled, and will grant Defendants' Motion as to that claim.

**D.    Real Estate Settlement Procedures Act Claim**

Plaintiffs argue in their Response that they have stated a claim under the Real Estate Settlement Procedures Act ("**RESPA**"), 12 U.S.C. § 2605. Defendants counter that Plaintiffs did not plead a RESPA claim in their Complaint, and that such

a claim is untimely in any case. The first of these arguments does not provide a clear basis to grant Defendants' Motion, since (as discussed above) the Rule 12(b)(6) analysis focuses on the factual allegations in the Complaint and not necessarily the specific theories identified. The second argument has merit, however. A RESPA claim must be brought "within 3 years" of its accrual. 12 U.S.C. § 2614. The Complaint alleges no facts that could support a RESPA claim based on conduct that occurred after the May 2010 sheriff's sale. Plaintiffs filed suit approximately seven years after the sale. Any RESPA claim that Plaintiffs could support with the allegations in the Complaint is time-barred under 12 U.S.C. § 2614.

The factual allegations in the Complaint do not support a RESPA claim in any event. In their Response, Plaintiffs cite two provisions of RESPA's implementing regulations that they allege Defendants violated. First, a loan servicer may not "make the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process" if the borrower is not more than 120 days delinquent in his or her payments. 12 C.F.R. § 1024.41(f)(1)(i). Second, if a borrower "submits a complete loss mitigation application" after the servicer has initiated foreclosure proceedings but more than 37 days before the scheduled foreclosure sale, the servicer may not move forward with the sale unless (1) the servicer has advised that the borrower is not eligible for any loss mitigation option (and the borrower has not appealed this under the regulations, an appeal has been denied, or the appeal

procedure is not applicable); (2) the borrower rejects all mitigation options offered by the servicer; or (3) the borrower fails to perform under an agreement on a loss mitigation option. 12 C.F.R. § 1024.41(g).

The Complaint does not set forth factual allegations that implicate either of these provisions. Plaintiffs have not alleged that Wells Fargo initiated foreclosure proceedings before Plaintiffs were 120 days delinquent in their payments; in fact, the Complaint suggests otherwise, as Plaintiffs' allegations are that Ms. Burnham first contacted Wells Fargo about loan modification in July 2008, and that Wells Fargo published a foreclosure notice in January 2009. (Compl. ¶¶ 15-18.) In addition, Plaintiffs have not alleged that they submitted a complete loss mitigation application to Wells Fargo, or that they fully performed pursuant to the TPP, and both allegations would be required to state a claim under 12 C.F.R. § 1024.41(g).

Plaintiffs' putative RESPA claim is untimely, and it fails on the merits as well.

## E.    Fees and costs

On the final page of their Motion, Defendants state that they "should be granted their costs and attorney fees incurred." (Defs.' Mot. at 24, Pg ID 217.) This is the only reference Defendants make to fees and costs, and they have neither raised arguments nor cited authority to support their request for this relief. The Court will deny Defendants' cursory request for costs and fees.

## IV.  CONCLUSION

Each of Plaintiffs' claims is both time-barred and insufficiently alleged under Rule 12(b)(6). Accordingly, the Court hereby GRANTS Defendants' Motion to Dismiss in its entirety.

IT IS SO ORDERED.

s/Paul D. Borman
Paul D. Borman
United States District Judge

Dated: February 13, 2018

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on February 13, 2018.

s/D. Tofil
Deborah Tofil, Case Manager